IN THE UNITED STATES BANKRUPTCY
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| NTP MARBLE, INC. DBA COLONIAL MARBLE AND GRANITE | |
| DEBTOR(S) | : BANKRUPTCY NO. 13-10087 |
| NTP MARBLE, INC. DBA COLONIAL MARBLE AND GRANITE | |
| PLAINTIFF(S) | |
| VS. | |
| ANASTASIOS PAPADOPOULOS AKA "TASOS" PAPADOPOULOS" | |
| DEFENDANT(S) | : ADVS NO. 13-0050 |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

  Before the Court is the Motion of Anastasios Papadopoulos (Tasos) to Dismiss the Debtor's Subordination Complaint and For Related Relief. The Debtor opposes the Motion. A hearing on the Motion was held on March 27, 2013. The matter was taken under advisement. For the reasons which follow, the Motion will be denied.[1]

---

[1] Because this matter involves the adjustment of the debtor-creditor or the equity security holder relationship, it constitutes a "core" proceeding. *See* 28 U.S.C. § 157(b)(2)(O).

*Complaint*

The Complaint seeks to subordinate Tasos' claim to both unsecured creditors as well as other equity holders. *See* Complaint, demand clause. Tasos' claim consists of a prepetition judgment in the amount of approximately $4 million. Complaint, ¶ 9. The judgment is alleged to represent one third of the amount of the value of the Debtor's business. *Id.*, ¶ 10.

The Complaint alleges two counts. The first count is entitled "Recharacterization" and *does not* seek affirmative relief. As its title suggests, this count seeks to have the claim deemed to be other than what Tasos says it is. Specifically, this count alleges that Tasos holds an equity interest and not a debt claim as he contends. The second count *does* ask for affirmative relief: it seeks to subordinate Tasos' claim under § 510 of the Bankruptcy Code: either under the mandatory subordination provision (subsection (b)) or the equitable subordination provision (subsection (c)) of that section.

*Motion*

In his Motion, Tasos raises four points: first, Tasos contends that the Complaint fails to state a claim either for *mandatory* or equitable subordination; second, the mandatory subordination claim fails because (1) Tasos' equity interest was converted into debt and because (2) there is no allegation that the claim arises from the purchase or sale of a security; third, the *equitable* subordination claim fails because there is no allegation of inequitable conduct, unfair advantage or injury to creditors; fourth, and finally, principles of estoppel should preclude the Debtor from arguing that Tasos' claim should be re-characterized as an equity interest. Motion, 2.

*Legal Standard*

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2008)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009) (explaining that pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss). The Supreme Court explained that although factual allegations are to be accepted as true for purposes of legal sufficiency, the same does not apply to legal conclusions; therefore, the factual allegations must sufficiently support the legal claims asserted. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1950. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Fowler*, 578 F.3d at 210; and *Phillips v. County of Allegheny*, 515 F.3d 224, 231-232 (3d Cir.2008).

*Recharacterization and Mandatory Subordination*

Although the request for re-characterization of Tasos' claim is plead separately in Count I, it is integral to the mandatory subordination claim in Count II. Bankruptcy Code § 510 provides for subordination of a claim in connection with a purchase or sale of a security:

> For the purpose of distribution under this title, *a claim* arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, *for damages arising from the purchase or sale of such a*

3

*security*, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (emphasis added). Pleading a mandatory subordination claim requires three elements: first, the *claim involves a security*; second, that there was a purchase or sale of such security; and third that the damages which make up his claim arose out of that purchase or sale. *See Liquidating Trust v. Wax (In re U.S. Wireless Corp.)*, 384 B.R. 713, 717-718 (Bkrtycy.D.Del.2008) The purpose of Debtor's re-characterization count is to have the court deem Tasos' judgment claim to constitute *not* debt, but rather, equity; i.e., a security. *See* 11 U.S.C. § 101(49)(A)(ii) (defining "security" to include "stock"). The re-characterization count alleges that despite holding a judgment, Tasos is a shareholder or equity owner and not a creditor. In determining if re-characterization is plead, the Court will perforce determine if the first prong of a mandatory subordination claim is likewise set forth. *See, e.g., Cohen v. KP Mezzanine Fund II, LP (In re Submicron)*, 432 F.3d 448, 454-455 (3d Cir. 2006) (undertaking a re-characterization inquiry with regard to corporate insider's claim that he was a creditor and thereby not subject to mandatory subordination).

*Re-characterization as a Security*

On the question of re-characterization, the Third Circuit has observed that

> courts have adopted a variety of multi-factor tests borrowed
> from non-bankruptcy case law. While these tests
> undoubtedly include pertinent factors, they devolve to an
> overarching inquiry: the characterization as debt or equity is
> a court's attempt to discern whether the parties called an
> instrument one thing when in fact they intended it as

4

> something else. That intent may be inferred from what the parties say in their contracts, from what they do through their actions, and from the economic reality of the surrounding circumstances. Answers lie in facts that confer context case-by-case.

*Submicron, supra*, 432 F.3d at 455-456. One bankruptcy court from this circuit has identified the following factors as relevant to this question:

> (a) names given to the instruments, if any, evidencing the indebtedness; (b) presence or absence of a fixed maturity date and a schedule of payments; (c) no fixed rate of interest and interest payments; (d) whether repayment depended on success of the business; (e) inadequacy of capitalization; (f) identity of interests between creditor and stockholder; (g) security, if any, for the advances; (h) ability to obtain financing from outside lending institutions; (i) extent to which the advances were subordinated to the claim of outside creditors; (j) the extent to which the advances were used to acquire capital assets; (k) presence or absence of a sinking fund; (l) presence or absence of voting rights; and (m) other considerations.

*In re Autobacs Strauss, Inc.*, 473 B.R. 525, 572-573 (Bkrtcy.D.Del. 2012) citing *In re Friedman's, Inc.*, 452 B.R. 512, 518 (Bkrtcy.D.Del. 2011).

In support of the contention that Tasos holds an equity interest, the Complaint alleges that Tasos made a capital contribution and not a loan to the business. While this contribution was not in the form of cash, it consisted of expertise and experience. Tasos alleges that he was to be granted 50% of the company stock. Tasos' expectation as to payment depended on the success of the business. The parties did not document this arrangement. *See* Complaint, ¶¶ 16-23. Based on these allegations, the Court finds the complaint to sufficiently plead that Tasos was an owner of, and not a lender to, the business.

5

*Purchase or Sale*

The statute next requires that the claim for damages arise from a "purchase or sale" of the security. To be sure, the grant of a 50% ownership interest in a closely held business is not precisely the same as purchasing shares of stock on an exchange. However, the term "purchase" is broadly defined. *See U.S. Wireless*, 384 B.R. at 718 (recognizing grant of stock options in compensation package constitutes purchase of a security for purposes of 510(b)); *In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 104 (Bkrtcy.D.Del.2008) (same); *In re Enron Corp.*, 341 B.R. 141, 151 (Bkrtcy.S.D.N.Y.2006)(same). To repeat, the Complaint alleges that in exchange for his expertise and experience, Tasos was to receive 50% of the company's stock. Based on that, the Court finds that the Debtor has alleged a purchase of a security for purposes of the statute.

*Damages*

The Motion alleges that there is no independent allegation of damages arising out of any such purchase or sale of a security by Tasos. The Court, however, does not read the Complaint that way. To the contrary, the Complaint makes clear that Tasos did not get what he bargained for when he contributed his experience and expertise. His claim for $4 million is alleged to constitute the profits to which he was entitled as a part owner of the business. The Court finds the complaint to allege that the damages which make up Tasos claim arose from his purchase of the 50% stock interest in the Debtor.

In sum, the Complaint alleges that Tasos' interest in the business was that of a stockholder, or equity holder, as opposed to a creditor. His claim against the Debtor is alleged to have arisen out of that equity interest. Accordingly, the Complaint sufficiently alleges a cause of action for mandatory subordination under § 510(b) of the Bankruptcy Code.

*Equitable Subordination*

Alternatively, the Complaint seeks to subordinate Tasos' claim on equitable grounds. In that regard, § 510 provides:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--
>
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest

11 U.S.C. § 510(c). The Third Circuit has explained that "[b]efore ordering equitable subordination most courts have required a showing involving the following three elements: (1) the claimant must have engaged in some type of inequitable conduct, (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code." *Citicorp Venture Capital Ltd v. Committee of Creditors holding Unsecured Claims (In re Papercraft Corp.)*, 160 F.3d 982, 986-987 (3d Cir. 1998) citing *U.S. v. Noland*, 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (describing existing case law as consistent with the three-part test identified in *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir.1977)).

7

*Conduct Element*

The parties disagree on whether the first of the three elements, inequitable conduct, is always a requirement for equitable subordination. Here, the Debtor relies on the Third Circuit decision in *Burden v. United States*, 917 F.2d 115, 120 (3d Cir. 1997) for the proposition that creditor misconduct is not always required. Response, 25. The Debtor further notes that within this circuit the lower courts are split on the question of whether misconduct is always a prerequisite or whether "no-fault" equitable subordination exists. *Id.*, 26.

Tasos maintains that the Debtor misconstrues the relevant Third Circuit authority. In two cases after *Burden*, explains Tasos, the Third Circuit specifically avoided the question of whether creditor misconduct is always required. In both *Citicorp, supra*, 160 F.3d at 987 n.2 and *Submicron, supra*, 432 F.3d at 462, the circuit court concluded that the lower courts' finding of misconduct on the part of the creditor was not in error and so elided the issue. Therefore, Tasos concludes, the Court of Appeals has not abrogated the requirement that, for purposes of equitable subordination, misconduct must always be demonstrated. Motion, 15-16.

The Court's own research shows that in terms of binding authority, both the Supreme Court and the Third Circuit have specifically reserved ruling on the question of "whether a bankruptcy court must always find creditor misconduct before a claim may be equitably subordinated." *See Noland*, 517 U.S. at 543, 116 S.Ct. 1524. Since that time, most courts to have considered "no fault" equitable subordination claims have waived the misconduct requirement in a limited set of cases. These involve tax penalties, stock redemption claims, and punitive damages claims. *SPC Plastics Corp.*

8

*v. Griffith (In re Structurlite Plastics, Corp.)*, 224 B.R. 27, 34 (6th Cir. BAP 1998); *Matter of Lifschultz Fast Freight*, 132 F.3d 339, 349 (7th Cir.1997); *Bayer Corp. v. Mascotech, Inc. (In re Autostyle Plastics, Inc.)*, No. 1-98-CV-658, 1999 WL 1005647, at *10 (W.D.Mich. May 25, 1999) ("The cases in which 'no fault subordination' has been applied are limited to cases involving tax penalty claims or stock redemption claims.").

Based on what is already alleged, however, the Court need not speculate as to how the Court of Appeals would rule. The Complaint cites what constitutes colorable misconduct on Tasos' part. Specifically, Tasos is alleged to have asserted as a debt claim what he previously asserted to constitute an equity claim. The Court finds it troubling that Tasos would take a position wholly at odds with the stance he took in the state court. His motivation appears obvious: the premise which served him so well in the state court will place him at the end of the line in the Bankruptcy Code's distribution scheme. This calls into question Tasos' good faith so much so that judicial estoppel might be invoked. *See Krystal Cadillac-Oldsmobile*, 337 F.3d 314, 319 (3d Cir. 2003) (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir.1996) ("[T]he basic principle of judicial estoppel ... is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."). For the limited purposes of sufficiency of pleading, the Court finds this to adequately allege misconduct, if that is indeed a requirement herein.

*Injury*

Subordinating Tasos' claim to the general unsecured class would alleviate the harm caused by otherwise including him in that class. His claim of $4 million is almost 50% of the dollar amount of the unsecured claims listed on the Debtor's Schedule F. Thus, the unsecured creditors can expect substantial dilution of their return if Tasos is paid on par with them. Subordination eliminates that risk.

*Consistent With Bankruptcy Principles*

Finally, subordination of Tasos' claim would not violate any bankruptcy principle. Indeed, it is entirely consistent with the rule of absolute priority. That rule provides that "to the extent of their debt creditors are entitled to priority over stockholders against all property of an insolvent[2] corporation." *Kansas City Terminal Ry. Co. v. Central Union Trust Co.*, 271 U.S. 445, 454, 46 S.Ct. 549, 551-552 (1926). If, as Debtor maintains, Tasos' claim is essentially a stockholder's claim, then all creditors must be paid in full before his claim is paid at all. Section 1129(b)(2) of the Bankruptcy Code codifies the absolute priority rule with regard to interest holders, and provides that: "the court ... shall confirm the plan ... if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(2) (emphasis added). By its terms, this statutory provision governs how a reorganization plan prioritizes classes of creditors and interest holders when comparing their relative rights. The Third Circuit has stated that the absolute priority rule requires "that creditors be paid in full before holders of equity receive any distribution."

---

[2] For purposes of the motion to dismiss, the Court will assume that the Debtor is insolvent. The summary of schedules appears to indicate that as well.

*In re PWS Holding Corp.*, 228 F.3d 224, 237 (3d Cir.2000). However, the rule only comes into play in the context of a "cramdown," i.e., when an entire class of impaired unsecured creditors has rejected a reorganization plan. *See In re Exide Techs.*, 303 B.R. 48, 78 (Bankr.D.Del.2003); *In re Winters*, 99 B.R. 658, 663 (Bankr.W.D.Pa.1989) ("The absolute priority rule is now applicable only when the proponent of the plan seeks to 'cram-down' the plan under the alternative confirmation standard contained in § 1129(b) on a class that is impaired and has rejected the plan.") For purposes of ruling on this motion, the Court assumes that the unsecured creditor class will receive impaired treatment.[3] The Court further assumes that if Tasos claim ought to be subordinated, then it would rank below the unsecured creditor class. Thus, the requested relief is consistent with applicable bankruptcy principles.

*Estoppel*

Finally, Tasos argues that the Debtor should be estopped from subordinating Tasos' claim. Both judicial and equitable estoppel are appropriate, says Tasos, based on Debtor's contention at the state court level that Tasos never had an equity interest in the company. Motion, 16-17.

Judicial estoppel is an equitable doctrine that entails "'the intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts.'" "Though there is no rigid test for judicial estoppel, three factors inform a federal court's decision whether to apply it: there must be (1)

---

[3] The summary of schedules shows the Debtor to be insolvent even after backing out Tasos $4 million judgment.

11

'irreconcilably inconsistent positions;' (2) 'adopted ... in bad faith;' and (3) 'a showing that ... estoppel ... address[es] the harm and ... no lesser sanction [is] sufficient.' " *G–I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir.2009) (quoting *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n. 5 (3d Cir.2008)).

Beginning with the first factor, the Court analyzes what Debtor's position was with regard to Tasos' interest in the business at the state court level and what that position is now. This is somewhat problematic considering that it requires consideration of matters outside the pleadings; however, the Court will accept for present purposes what Tasos maintains was the Debtor's position as to Tasos' interest in the company. According to Tasos, the Debtor "vociferously argued that Tasos never had an equity interest in the company under the false contention that he was required but failed to pay for shares in NTP." *See* Motion ¶ 32. Now, says Tasos, Debtor is alleging that Tasos did have an equity interest in the Debtor and does so in order to subordinate Tasos' claim. *Id.*

The Court does not see these two positions as necessarily inconsistent. Formerly, the Debtor argued that Tasos was not an owner of the company because he did not pay for his shares. Motion, 16 ¶ 32. As is clear, however, the Debtor lost in state court and its position was rejected. Presently, Debtor would operate from that premise by subjecting what resulted from the state court ruling; to wit, a judgment for shareholder profits to equitable principles of subordination. The Court does not see the Debtor's present stance as in conflict with its prior position. Rather, it is simply a recognition that the issue is now settled as a matter of law.

For the same reason, a finding of congruence readily leads the Court to conclude that there is no bad faith demonstrated by what the Debtor is trying to do. Debtor is within its right to seek subordination of a claim consistent with a specific bankruptcy code provision.

Finally, because the Debtor's present course is neither opportunistic nor untoward, the Court is at a loss to see what harm is threatened. If the Court were to accept Tasos' argument, then every litigant who suffered an adverse ruling could allege harm. For all of these reasons, there are no grounds for judicial estoppel.

*Equitable Estoppel*

Neither do there exists grounds for equitable estoppel. Under Pennsylvania law, equitable estoppel consists of three elements: "(1) a representation of fact was made; (2) upon which the opposing party had the right to rely; and (3) the denial of the represented fact by the party making the representation would result in injury to the relying party." *In re RFE Industries, Inc.*, 283 F.3d 159, 164 (3d Cir. 2002)

Like the judicial estoppel claim, a claim for equitable estoppel simply does not exist. First, even if the Debtor's postpetition arguments could be construed as irreconcilable with those taken prepetition, there is no indication that Tasos somehow relied (or had the right to rely) upon any representation of the Debtor. To the contrary, Tasos has challenged the Debtor from the outset. In short, this estoppel claim is likewise unconvincing.

*Summary*

The Court finds that the Complaint states a claim under either of the two subsections of the Bankruptcy Code's subordination provision discussed herein. Accordingly, the motion to dismiss will be denied.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: April 17, 2013