**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: : | Chapter 11 |
| NTP MARBLE INC., d/b/a : COLONIAL MARBLE AND GRANITE, : | Case No. 13-10087 (SR) |
| Debtor. : | |
| NTP MARBLE INC., d/b/a : COLONIAL MARBLE AND GRANITE, : | Adv. Proc. No. 13-00050 (SR) |
| Plaintiff : | |
| v. : | |
| ANASTASIOS PAPADOPOULOS, a/k/a : "TASOS PAPADOPOULOS", : | |
| Defendant. : | |

**SUR REPLY OF ANASTASIOS PAPADOPOULOS IN OPPOSITION TO DEBTOR'S
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

Anastasios Papadopoulos a/k/a Tasos Papadopoulos ("Defendant" or "Tasos")[1], by and through his undersigned counsel, Obermayer Rebmann Maxwell & Hippel LLP, pursuant to the directives of the Court at the telephonic conference of July 9, 2013, files this instant Sur Reply in Opposition ("Sur Reply") to the Debtor's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(b)(6) ("Motion for Summary Judgment") and avers that there are substantial and genuine issues of disputed material fact mandating the denial

---

[1] Because Tasos Papadopoulos is unrelated to but shares the same surname as Nikolaos "Nikos" Papadopoulos and Athanasios "Tom" Papadopoulos, who are principals of the Debtor, first names will be used to avoid confusion in identifying the parties.

1

of summary judgment at this time and, in opposition to the Debtor's Motion for Summary Judgment, Tasos states:

### A.     Sur Reply to the Debtor's Reply Memorandum of Law.

In the Debtor's Reply Memorandum of Law to the Response of Anastasios Papadopoulos to the Debtor's Motion for Summary Judgment ("Reply Memorandum"), the Debtor tellingly abandons one of its primary arguments of its Motion for Summary Judgment, which argued that "the case at bar is akin" to case of SeaQuest Diving, *infra*. See Debtor's Motion for Summary Judgment, pp. 11-15. As Tasos demonstrated in his Response in Opposition, pp. 10–12, SeaQuest Diving made plain that, "[b]y redeeming equity for debt before the bankruptcy filing, the claimant can convert from the risk/return position of an equity investor to a fixed, pre-petition debt due and owing the claimant ***as a creditor***." SeaQuest Diving LP v. S & J Diving Inc. (In re SeaQuest Diving LP), 579 F.3d 411, 422–423 (5th Cir. 2009)(emphasis added). If this Court were to apply SeaQuest Diving, it would have to enter summary judgment against the Debtor and in favor of Tasos: regardless of any arguable interest Tasos *previously* had as an equity investor — something he had not been since 2007, when he was forced out of the business and denied his shares — as such interest had been "converted" to a **debt** by the filing of his lawsuit (which requested *solely* a monetary judgment) and by the state court verdict and judgment, which entered *solely* a monetary judgment in advance of the bankruptcy petition. Little wonder Debtor has changed course.

Debtor's Reply Memorandum makes two new arguments. First, contrary to its Motion for Summary Judgment, Debtor now asks this Court to ***not*** "look behind" Tasos' judgment to understand its substance; instead, Debtor now asks this Court to put blinders on and view Tasos claim as if "the Complaint and Jury Verdict in the state court action represent the universe of

2

Tasos' claim." See Debtor's Reply Memorandum, p. 1. Obviously, if this Court is going to "look behind" Tasos' claim[2], then "the universe" of Tasos' claim is **the entirety of the litigation**, not merely the two documents the Debtor thinks it has the best chance of misconstruing in its favor.[3] Debtor's motivation for requesting that the Court blind itself to the underlying litigation is easy to discern: as explained at length in Tasos' Response in Opposition, pp. 7–12, in the State Court Litigation, NTP *repeatedly* asked the State Court to interpret Tasos' Complaint as seeking delivery of stock, and the State Court *repeatedly* denied that request; instead holding that Tasos was seeking, and was entitled to, solely a monetary judgment. Debtor's argument that this Court should "look behind, but not too closely" should be denied.

As part of its new "look behind, but not too closely" argument, Debtor cites two cases, Deep Marine and Tri Star Esperanza, *infra,* which are both readily distinguishable, and neither supports the arbitrary imposition of subordination every time a former equity holder brings a claim. In Deep Marine, the claimants were shareholders at all times up to and through the bankruptcy petition, and their appraisal claims had only just begun progressing through state court when the bankruptcy petition was filed. Official Comm. of Unsec. Creditors v. FLI Deep Marine LLC (In re Deep Marine Holdings, Inc.), Adv. No. 10-03116, 2011 Bankr. LEXIS 579 (Bankr. S.D. Tex. Jan. 19, 2011). Such circumstances are in sharp contrast to those faced by Tasos, who was forced out of NTP in 2007, filed his litigation in 2010, and was awarded a monetary judgment in 2012; all prior to the filing of NTP's bankruptcy petition in January of 2103.

---

[2] Tasos contends that such "look behind" is not warranted, per Burtch v. Gannon (In re Cybersight LLC), No. 04-112 (JFF) 2004 U.S. Dist. LEXIS 24426 (D. Del. Nov. 17, 2004), as discussed in Tasos' Response in Opposition at pp. 22–23.

[3] Unsurprisingly, Debtor found no precedent suggesting bankruptcy courts should disregard the substance of the prior litigation and "look behind" only to the documents Debtor believes support its argument.

In Tri Star Esperanza, the creditor was acknowledged by the debtor to be a member of an LLC[4] who had contributed significant capital[5], had exercised an equity buyback option, and who had obtained an arbitration judgment regarding the value of that buyback on the eve of the bankruptcy petition in an apparent gambit to transform an equity holding into a debt position to avoid the consequences of the bankruptcy scheme of priority and distribution. In affirming the subordination of the claim, the Ninth Circuit specifically held that the claimant's case was ***not*** the "transformation of equity into debt in a transaction that is old and cold and that has long been treated as part of the enterprise's debt structure" — as Tasos' claim most certainly is, given that he was forced out in 2007 and that he obtained his Judgment *before* most of the other unsecured creditors' debts were even incurred — but rather was part of "the so-called 'equity cushion' created by an investor's contribution of capital [and thus] [w]e presume that creditors relied on this equity cushion in deciding to extend credit to the debtor." O'Donnell v. Tristar Esperanza Props., LLC (In re Tristar Esperanza Props., LLC), 488 B.R. 394, 403-04 (B.A.P. 9th Cir. 2013). The Ninth Circuit thus affirmed subordination because of the significant equity contributed by the claimant and the temporal proximity between the buyback request and the petition, all of which suggested that the risk allocation expectations of the claimant were closer to those of an equity investor than an unsecured creditor. It should be also noted that Debtor's major creditor, MS International, Inc., knew of the State Court Litigation, provided testimony before the State Court and further extended credit to NTP with full knowledge of Tasos' suit.

---

[4] Here, of course, Debtor has vehemently denied Tasos was a shareholder and continues to deny the same in its pending appeal before the Pennsylvania Superior Court.

[5] It is undisputed that Tasos never contributed capital to the company, and thus was never believed by any creditor to be part of the "equity cushion," described *infra*.

Tristar Esperanza is on its own terms distinguishable: had Tasos contributed significant capital, and had he been an equity holder in the Debtor in the *six years* preceding its bankruptcy petition, **and** had he not obtained his judgment *prior* to the vast majority of the unsecured claims, then perhaps Tristar Esperanza would be informative. Instead, Tasos' claim is at most, as that Court noted, the "transformation of equity into debt in a transaction that is old and cold and that has long been treated as part of the enterprise's debt structure" -- a claim more properly viewed under the SeaQuest Diving, In re Mobile Tool Int'l, Inc, In re Montgomery Ward Holding Corp., and In re Cybersight LLC analysis. No creditor relied upon Tasos' "equity cushion," his claim for monetary damages has been treated as part of the enterprise's debt structure for years, and his judgment for a specific amount — his ***debt*** — was part the enterprise's debt structure for years, and fixed in amount for more than six months prior to the bankruptcy petition, the time when most of the unsecured debt was incurred. Since being forced out of NTP in 2007, Tasos' had no expectation of the risks and rewards attendant to equity but, rather, had the expectations of a creditor seeking to obtain redress for the damages inflicted by the Debtor and its principals on his livelihood.

Second, Debtor's Reply Memorandum simply misstates Tasos' argument, characterizing it as "Tasos alleges, with no factual basis in the record, that his claim is merely debt and has nothing to do with future profits or his interest as a shareholder." Debtor's Reply Memorandum, p. 2. This characterization is simply wrong; Tasos has consistently sought, from the onset of the State Court Litigation through the present, a monetary judgment reflecting the value of his loss arising from the breach of contract of Debtor and its principals. His arguable "interest as a shareholder" was irrevocably destroyed by the illegal actions of Debtor and its principals in 2007, then converted to a simple debt when he filed his litigation in 2010 seeking *only* monetary

relief, and then confirmed as a debt for a specific sum of money by the State Court Judgment in 2012, all of which occurred prepetition. Indeed, it is the Debtor that is attempting now to make arguments "with no factual basis in the record." Thus, Debtor does not really want this Court to actually "look behind" the State Court Judgment to see that the State Court already repeatedly considered and rejected NTP's request that Tasos be treated as a current shareholder. Tasos has been dispossessed of any shareholder interests in NTP since 2007 and filed the State Court Litigation seeking only a monetary judgment. Even under the broadest construction of subordination under 11 U.S.C. § 510(b), Tasos' claim "has long been treated as part of the enterprise's debt structure," as it was by the unsecured creditors, none of whom relied on capital contributions of Tasos (because they were not monetary), and all of whom incurred their claims against NTP in the years after his ouster and lawsuit and in the months after his State Court Judgment. See, Tristar Esperanza, *supra*.

     A judgment creates a new and independent obligation with its own set of unique features separate and distinct from the underlying cause of action: by operation of law, a judgment creates a lien on all real property of the judgment debtor in that judicial district and the judgment debtor is prohibited from encumbering or transferring assets. A final judgment extinguishes the underlying cause of actions and creates a new cause of action based upon the judgment and the underlying claim merges into the judgment. Estate of Charles A. Grazione, Deceased, No. 2222, 1979 Phila. Cty. Rptr. LEXIS 7, at *6-7 (CCP, Phila. Cty. Jan. 18, 2979), citing, Restatement of Judgments, § 45, comment at 175, 175, § 47 at 181(1942). The same holds true of the State Court Judgment entered in favor of Tasos. The Judgment awarded to Tasos established a fixed, prepetition debt due and owing to Tasos as a creditor and irrevocably subsumed any nascent equity interests in NTP. Quite simply, mandatory subordination under 11 U.S.C. § 510(b) is not

invoked when a claimant's right to share in profits terminated prior to the petition and the debtor became legally obligated to the claimant by the award of a money judgment.

### B. Sur Reply to the Joinder of the Official Committee of Unsecured Creditors.

The Official Committee of Unsecured Creditors ("Committee"), in its Joinder to the Debtor's Motion for Summary Judgment ("Joinder"), succumbs to the same misapprehension of the nature of the State Court Judgment as the Debtor, implying somehow that Tasos was awarded an ownership interest in NTP. See Committee Joinder, p. 2. This notion has been thoroughly disabused not only in this Sur Reply but in Tasos' Response in Opposition, so no further discussion is warranted.

The Committee makes a lengthy citation of the Court's Opinion denying Tasos' Motion to Dismiss the Debtor's Subordination Complaint, suggesting that the Court has already determined that Tasos' assertion of a debt claim in the bankruptcy case is at odds with the nature of the claims raised in State Court Litigation. See Committee Joinder, p. 2-3. It must be noted, initially, that the language of the Court's Opinion quoted by the Committee relates to the Court's analysis of the request to dismiss the count of equitable subordination under 11 U.S.C. § 510(c) and, thus, has limited application to the present question of summary judgment of the mandatory subordination claims under § 510(b). Second, Tasos respectfully suggests that the Court's observations, made in the context of a motion to dismiss, were preliminary in nature and were based on a misapprehension of the legal positions of Tasos and the rulings made in the State Court Litigation.  As discussed in the Response in Opposition, pp. 7-12, and in the instant Sur Reply, pp. 2-6, Tasos has consistently sought, from the onset of the State Court Litigation through the present, a monetary judgment reflecting the value of his loss arising from the breach

of contract of Debtor and its principals. Thus, Tasos' assertion of a fixed-money claim in this bankruptcy case is entirely consistent with the State Court Litigation.

The cases cited by the Committee in support of its contention that the contours of subordination under 11 U.S.C. § 510(b) can be stretched in application to Tasos' State Court Judgment are readily distinguishable so as not to be supportive of its position. The Committee cites Baroda Hill Inv., Inc. v. Telegroup, Inc. (In re Telegroup, Inc.), 281 F.3d 133, 139-40 (3d Cir. 2002) and Liquidating Trust of U.S. Wireless Corp. v. Wax (In re U.S. Wireless Corp.), 384 B.R. 713, 723-24 (Bankr. D. Del. 2008) for the general proposition that the scope of § 510(b) has been interpreted by courts in the Third Circuit to include claims arising beyond the actual security purchase transaction. See Committee Joinder, p. 3-4. First, the policy foundations for mandatory subordination under 11 U.S.C. § 510(b): (i) the dissimilar risk and return expectations of shareholders and creditors; and (ii) the reliance of creditors on the equity cushion provided by shareholder investment that drove the decision of the Third Circuit in In re Telegroup, Inc. are simply not present here. Id. at 139-40. See Response in Opposition, p. 15. Further, in Telegroup the claim was never converted to a judgment or a debt instrument and, unlike Tasos, the claimant remained a shareholder as of the petition date. Central to the Third Circuit's analysis was that equity investors chose to participate in profits and, in exchange, assumed the risk of business failure which is the distinguishing factor between equity and creditors and justifies the subordination of certain claims in bankruptcy. Id. at 142. In contrast, Tasos was ousted from NTP by the actions of its principals and was not able to enjoy the incidents of ownership that justify subordination and had no expectations of the risks and rewards of equity. Even in In re U.S. Wireless Corp., which diverged from the Cybersight analysis by finding a material distinction for purposes of § 510(b) between claims based on fixed debt obligations and claims

based on judgment, the claimant enjoyed a much more significant and extensive enjoyment of the incidences of equity ownership than what was afforded to Tasos.

The Committee cites In re Alta+Cast, LLC, 301 B.R 150 (Bankr. D. Del. 2003) as providing the foundation for the bankruptcy court's decision in In re U.S. Wireless Corp., *supra*. See Committee Joinder, p. 5. However, unlike the pre-petition Judgment awarded to Tasos, the judgment obtained by the former employee in Alta+Cast was not entered until **after the petition date**. Id. at 153. Additionally, the claim asserted by the equity holder was based on damages stemming from the debtor's breach of the employment termination agreement which, itself, contained a contractual provision for the issuance of a note that was to be subordinated to the debt owed to the bank and trade creditors of Alta+Cast. Id. at 153-54.

The Committee's assertion that 11 U.S.C. § 510(b) applies to fixed-debt, money-judgment claims and as well as specific performance requests for the delivery of the actual equity interest ignores the compelling analysis of the District Court in Cybersight. See Committee Joinder, p. 6. There, the District Court concluded that "there was no material difference between the exchange of a promissory note for equity interests, which has been held [in Mobile Tool, 306 B.R. at 781] not to be subject to Section 510(b) and the judgment that [the employee] received in [that] case." Cybersight, 2004 U.S. Dist. LEXIS 24426, at *10. In both instances, the claimants prepetition were no longer able to participate in the benefits and risks associated with being equity holders of the debtors and did not retain the nexus or causal connection necessary for subordination under 11 U.S.C. §11 U.S.C. § 510(b).[6]

In addition to the legal argument militating against the application of the subordination

---

[6] The Committee's reliance on Rombro v. Dufrayne (In re Med Diversified, Inc.), 461 F. 3d 251 (2d Cir. 206) for the proposition that a claimant need not be a shareholder for subordination under § 510(b) to apply can be distinguished as the claims there were not reduced to a prepetition judgment. See Committee Joinder, p. 6-7.

provisions of § 510(b) to Tasos' Judgment expressed in Tasos' Response in Opposition and Sur Reply, summary judgment is inappropriate at this juncture because material facts remain in dispute that preclude such relief. As detailed in the Response in Opposition, Tasos filed an Answer, Affirmative Defenses, Counterclaim and Third-Party Complaint to the Debtor's Subordination Complaint that joined Nikos and Angelo as Third-party Defendants, alleging that to the extent that Tasos' prepetition, fixed-debt State Court Judgment claim is subject to recharacterization or mandatory or equitable subordination under 11 U.S.C. § 510(b) or (c), the equity interests of Nikos and Angelo should be equitably subordinated to the impaired Judgment claim or interests of Tasos pursuant to 11 U.S.C. § 510(c) due to the inequitable conduct of Nikos and Angelo in forcing Tasos from NTP, altering corporate documents and changing the rules of corporate governance to Tasos' detriment. Nikos and Angelo have each filed Answers to the Third-Party Complaint and discovery is ongoing and subject to a separate scheduling order. Accordingly, because these requests go hand-in-hand, Tasos asserts that a decision regarding the Debtor's Motion for Summary Judgment should not be made before sufficient facts are before the Court to render a determination of Tasos' subordination demands against Nikos and Angelo.

Finally, Tasos asserts that the evidentiary hearing on the Motion to Dismiss NTP's Bankruptcy Case will demonstrate that the Debtor's entire proceeding, by a solvent and profitable debtor, amounts to a two-party dispute, worthy of dismissal. The Debtor's own Amended Plan shows equity over and above what is owed to unsecured creditors. The Debtor is, therefore, using subordination as a maneuver to flush out a legitimate fixed monetary claim asserted by a cheated former shareholder so that the Debtor's principals can continue to retain and exercise their ownership interests through a "straw" owner, Pamela, without paying creditors in full.

WHEREFORE, for the reasons and authority set forth herein and in the Response in Opposition, Anastasios Papadopoulos respectfully requests the denial of the Debtor's Motion for Summary Judgment and for such other and further relief as is just and equitable.

                                            Respectfully submitted,

Dated: July 17, 2013        By:  */s/ Edmond M. George*
                                            Edmond M. George, Esquire
                                            D. Alexander Barnes, Esquire
                                            Michael D. Vagnoni, Esquire
                                            OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                                            One Penn Center, 19th Floor
                                            1617 John F. Kennedy Blvd.
                                            Philadelphia, PA 19103-1895
                                            215-665-3014 – Telephone
                                            215-665-3165 – Facsimile

                                            *Counsel to Anastasios Papadopoulos*